Ben SILVA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–89–00415–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 24, 1990.

William Rugeley, San Marcos, for appellant.

W.C. Kirkendall, Dist. Atty., Seguin, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for voluntary manslaughter with punishment assessed at ten years' imprisonment.

There are two points of appeal, both contending error occurred during trial. The first is that the trial court erred by denying appellant's *Batson v. Kentucky*[1] challenge to the State's exclusion from the jury of persons of Hispanic surname.

■ After the peremptory strike lists of appellant and the prosecution were completed[2], appellant obtained a hearing based on the prosecution striking persons with Hispanic surnames from the jury venire, which resulted in an all white petit jury. The court conducted a *Batson* hearing. *See also* TEX. CODE CRIM PROC.ANN. art. 35.261 (Vernon 1989).

■ In *Batson* the United States Supreme Court held that the Equal Protection Clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as a defendant, as a group, will be unable impartially to consider the State's case against that defendant. *Dewberry v. State*, 776 S.W.2d 589, 590 (Tex.Crim.App.1989). The defendant must first show he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant must further show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the impaneling of the petit jury raises the necessary inference of purposeful discrimination. *See Dewberry v. State*, 776 S.W.2d at 590, citing *Batson* 476 U.S. at 96, 106 S.Ct. at 1722.

■ The court, in *Tomkins v. State*, 774 S.W.2d 195 (Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), stated that a prima facie case represents the minimum quantum of evi-

---

1. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). All references to *Batson v. Kentucky* apply to selection of the petit jury in this case.

2. The defendant makes a timely objection within the *Batson* lines if such objection is made after the composition of the jury is made known but *before* the jury is sworn and the venire panel is discharged. *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Crim.App.1987); *accord Cooper v. State*, 791 S.W.2d 80, 83 (Tex.Crim.App.1990); TEX.CODE CRIM PROC.ANN. art. 35.261 (Vernon 1989).

dence necessary to support a rational inference that the allegation of fact is true. *Id.* at 201. Once the defendant establishes a prima facie case, the burden shifts to the State to come forward with a neutral explanation of why its peremptory strikes were used on persons of the defendant's race. The explanation need not rise to the level of justifying the exercise of a challenge for cause, however, the prosecutor must articulate a neutral explanation related to the particular case to be tried. *See Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24. The trial court then will have the duty to determine if the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724.

■ The *Batson* court emphasized that a finding of intentional discrimination is a finding of fact. A reviewing court ordinarily should give findings by the trial judge great deference since they turn largely on evaluation of credibility. *Id.* at 98, note 21, 106 S.Ct. at 1724, note 21. *Accord Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App.1988). "[The focus of the trial judge, as well as the appellate court] should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal." *Keeton,* 749 S.W.2d at 870.

In this case the trial court did not make findings of fact. However, by overruling the motion for a determination of purposeful discrimination, the court impliedly found there was none. We will review the record accordingly.

The strike lists in our record reflect that the defendant struck one Hispanic and exercised all 10 peremptory strikes, with two of them exercised on unreached potential jurors (outside the final panel). The State's strike list shows it exercised all 10 peremptory strikes, four of them on His-panic veniremen who were encompassed within the final panel and two on Hispanic veniremen who were not reached. The State struck three white veniremen who were reached on the panel and one who was not reached. The strike lists reflect three "double" strikes by appellant and the State, all on white veniremen with two above the cut-off place, and one below.

■ Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all as long as that reason is related to his view concerning the outcome of the case to be tried, he may not do so solely on account of race on the assumption that Hispanic jurors will be unable to impartially consider the State's case against a Hispanic defendant. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

■ In the present case the prosecutor offered his explanation of the use of peremptory strikes which excluded venirepersons of the same race as the defendant. He testified that the strikes were based primarily on the age of the veniremen. "I struck, with the exception of one juror, every juror below the age of thirty because ... from my experience as a prosecutor and defense lawyer ... older jurors are generally more likely to be prosecution minded or favorable to the prosecution." He gave the recorded age of veniremen struck by him. They were: 1. Bueno, age 24; 2. Shaper (white), age 22 (double strike); 3. Reed (white), age 28; 4. Campos, age 27; 5. Nieto, age 22 (a student at Gary Job Corps—the prosecutor said it was his experience that some people with criminal records or problems with authorities have been students there); 6. Mitchell, age 25 (white, a double strike who was not reached on the panel); 7. Castillo, age 25; 8. Lea Ann Miller Rodriguez (white, married to Hispanic), age 25; 9. Guinn (white, "didn't like his looks"—a double strike also); 10. Casarez, age 47. The prosecutor said he made this strike because "he is currently unemployed. Unemployed people are less likely to be sympathetic to the

prosecution. In addition, I elicited during voir dire the fact that he is unemployed, and I believe I embarrassed him in front of the rest of the jury panel, and he would not be disposed to be favorable to me."

He stated he did not strike one juror, Peterson, age 28, because "I know him personally. And I also know he works for the City of Schertz and has worked there a long time. I kept him because he is employed by a public entity. I know him to be of a good reputation. My practice has been to strike jurors [less than thirty years of age] unless I know them or their family or know of them."

On cross-examination the prosecutor was asked only one question: whether Peterson was the only juror on the jury under thirty years old. The answer was that was the only one the prosecutor was "aware of that I did not strike." The record reflects that, in fact, Peterson was the only juror under the age of thirty. There was therefore no resulting impeachment by the question and answer. The appellant presented no other evidence.

The finding of the trial court is based on the credibility of the prosecutor, content of the explanation, and all the other surrounding facts and circumstances. The age reasons given by the prosecutor in this case can be said to be related to the outcome of this case. Further, the record does not disclose disparate examination of Hispanic members of the venire, nor did appellant argue that to the trial court or on appeal.

Under *Batson*, once this prosecutor gave a race-neutral explanation of his legitimate reasons for exercising his peremptory strikes, appellant's prima facie case was rebutted. The burden to show purposeful discrimination shifted back to appellant to impeach or refute the neutral explanation or show that it was merely a pretext. However, the prosecutor's testimony was not controverted or impugned. The trial judge in the present case, as the fact finder, determined no purposeful discrimination had been shown. We cannot say this was

"clearly erroneous." *See Whitsey v. State*, 796 S.W.2d 707 (Tex.Crim.App.1990). We agree and overrule point of error one.

■ Appellant next asserts that error occurred when the trial court allowed the prosecutor to "testify" during final argument at the guilt/innocence phase of trial.

When appellant testified at trial, the prosecutor sought to impeach him by reading from excerpts of his testimony before the grand jury. The grand jury testimony was typed into transcript from a tape recording (no grand jury reporter). Defense counsel then countered by questioning appellant about the grand jury testimony, filling in and correcting certain missing and unrecorded parts of the transcript, where the word "inaudible" had been inserted. From his testimony at trial explaining and enlarging upon the grand jury transcript, it was plain that appellant relied upon self defense or proof of the lesser offense of voluntary manslaughter.

During jury argument the defense counsel said he was upset because the prosecutor misread something about his client. "He intentionally left you with the impression that that was all my client had said at that time in that tape recording." Defense argument continued:

> But on the end of that was the word "inaudible." The question was, "Did you think he was going to kill you." "Well, nobody know." Then inaudible. And then the prosecutor got up here and showed that to Mr. Silva ... He gets him to admit that [was] all he said ... "I don't know why the State is driven to do that to try and get a conviction in this case."

The prosecutor, in final argument, called this a slur. "How can I be underhanded when I showed it to his client and he was reading along, and counsel had a copy." The court sustained the defense objection to "outside the record." At that point, appellant obtained all the relief requested. Thereafter, the State returned to the subject of grand jury testimony. Defense counsel objected: "I think that is outside

the record." The trial court stated: "The jury will have to recall the evidence, Counsel." Again the State came back to the same subject. Defense counsel said, "He is doing it again, quoting something that we don't know because nobody was there." The trial court stated, "The jury will have to recall the evidence."

There was no adverse ruling by the trial court. In two instances no ruling was obtained, and in the other appellant received all the relief he requested. Nothing is presented for review. *Moffett v. State*, 555 S.W.2d 437, 443 (Tex.Crim.App.1977); *Perkins v. State*, 628 S.W.2d 112, 115 (Tex. App.—San Antonio 1981).

■ One of the areas of proper jury argument is in answer to the argument of opposing counsel. *McKay v. State*, 707 S.W.2d 23, 36 (Tex.Crim.App.1985); *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim.App. 1973). We perceive the present argument as answering the argument of opposing counsel. The second point is overruled.

The judgment of the trial court is affirmed.

CHAPA, Justice, concurring.

The majority rejects appellant's *Batson v. Kentucky*[1] challenge to the State's exclusion from the jury of persons with Hispanic surnames. I concur in the result only because the record fails to show that the appellant made the trial judge aware of the information in the record which casts considerable doubt on the State's "permissible racially neutral selection criteria" explanation to the court for the Hispanic challenges. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721.

In *Batson*, the United States Supreme Court announced it's disapproval of the State's systematic exclusion from the jury of persons of the same race as the defendant, stating:

Moreover, since *Swain* [*v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759], we have recognized that a [Hispanic] defendant alleging that members of his race have been impermissibly excluded from the venire may make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose.... Once the defendant makes the requisite showing, the burden shifts to the State to explain adequately the racial exclusion.... The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties.... Rather, the State must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result." *Alexander v. Louisiana*, ... [405 U.S. 625] at 632, 31 L.Ed.2d 536, 92 S.Ct. 1221 [1226]; *see Washington v. Davis*, ... [426 U.S. 229] at 241, 48 L.Ed.2d 597, 96 S.Ct. 2040 [2048]. (Footnote omitted.)

\* \* \* \* \* \*

Thus, since the decision in *Swain*, this court has recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*. These decisions are in accordance with the proposition, articulated in *Arlington Heights v. Metropolitan Housing Development Corp.*, that "a consistent pattern of official racial discrimination" is not "a necessary predicate to a violation of the Equal Protection Clause. A single inviodiously discriminatory governmental act" is not "immunized by the absence of such discrimination in the making of other comparable decisions." 429 U.S. [252], at 266, n. 14, 50 L.Ed.2d 450, 97 S.Ct. 555 [564]. ... (Emphasis in original.)

\* \* \* \* \* \*

If the trial court decides that the facts establish prima facie, purposeful discrim-

---

**1.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

ination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed. . . .

*Id.* 476 U.S. at 93–100, 106 S.Ct. at 1721–25.

The Texas Court of Criminal Appeals recognized the dictates of *Batson,* and adopted a standard of review for such cases in Texas stating:

We believe that our focus, as well as that of the trial judge, should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. *If the record supports the findings of the trial judge, they will not be disturbed on appeal.*

*Keeton v. State,* 749 S.W.2d 861, 870 (Tex. Crim.App.1988). (Emphasis added.)

However, subsequently, in *Whitsey v. State* [2], the Texas Court of Criminal Appeals declared that the proper standard of review in *Batson* cases is the "clearly erroneous" standard which they described as follows:

This case law review teaches that the "supported by the record" standard adopted in *Keeton,* 749 S.W.2d 861, is actually an analytical tool used in determining whether a trial judge's findings of fact are clearly erroneous or should be accorded great deference. While the nomenclature is different, the analysis is essentially the same under each of the three "standards of review"—clearly erroneous, great deference, supported by the record—and, in fact, the clearly erroneous and great deference standards engage in the same level of review.

*Whitsey,* 796 S.W.2d at 715.

The record here clearly reflects that the trial court found that the appellant had indeed made a prima facie case of purposeful discrimination by showing that the appellant was Hispanic, that six of the ten jurors struck by the State were Hispanics,

and that the result was, what was termed by the appellant, a "lilly white" jury, consisting of no Hispanics or Blacks. Thus, the burden shifted to the State to "explain adequately the racial exclusions" as required by *Batson,* 476 U.S. at 94, 106 S.Ct. at 1721.

Of the ten jurors struck by the State, six had Hispanic surnames: Bueno, Casarez, Campos, Nieto, Castillo, and Rodriguez. Initially, the State attempted to comply with its *Batson* burden of explaining adequately the racial exclusion *in this case* by succeeding in having the trial court take judicial notice of past cases tried before the same trial court wherein, allegedly, the State did not strike all the Hispanics. However, the United States Supreme Court declared that the determination to be made under the *Batson* rule must rely on "the facts concerning [the State's] selection *in this case*" because "[a] single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. The State then presented the following explanation:

STATE: Now, for the strikes that were . . . primarily exercised on the basis of age. I have never, with the exception, I believe, of one juror, to strike [sic] every juror under the age of thirty years old because I feel from my experience as a prosecutor and as a defense lawyer that the older jurors are generally more likely to be prosecution minded or favorable to the prosecution.

Jesse Bueno lists his age as twenty-four.

Felipe Casarez was struck because he is currently unemployed. Unemployed people are less likely to be sympathetic to the prosecution. In addition, I elicited during voir dire the fact that he is unemployed, and I believe I embarrassed him in front of the rest of the jury panel, and he would not be disposed to be favorable to me.

2. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Crim. App.1990) (on State's Motion for Rehearing).

Ralph Campos, the next strike I made, he is twenty-seven years old. And he was struck because of age.

Edward Nieto is twenty-two years old and also a student at Gary Job Corps. It's frequently been my experience—Mr. Rugeley [defense counsel] may know more about this than I do, I suspect—has been a place in the past—I don't know about Mr. Nieto specifically—that people with criminal records or problems with authorities in the past have been students.

Mrs. Castillo is the next one. She is twenty-five years old. I struck her because of her age.

The last one was Lea Ann Miller Rodriguez. I would like the record to reflect although she has a Hispanic surname, she is not Hispanic. And is anglo, I suspect. Her husband's name is Antiago Rodriguez. Her maiden name was Miller. But I struck her because she is twenty-one years of age.

The only juror that I know that was not struck by me under the age of thirty is John Edward Peterson. And I struck him [sic] because I know of him personally. And I also know he works for the City of Schertz and has worked there for a long time. I kept him because he is employed by a public entity. I know him to be of a good reputation.

My practice has been to make strikes of jurors under the age of thirty years old unless I know them or their family or know of them.

Those are my reasons for the strikes in this case, Your Honor. I offer myself for cross examination.

[APPELLANT'S DEFENSE COUNSEL]: It's your testimony that the only juror that is on this jury that is under thirty years old is Mr. Peterson, is that correct?

[PROSECUTOR]: That's the only one that I am aware of that I did not strike under the age of thirty.

[APPELLANT'S DEFENSE COUNSEL]: Nothing further, Your Honor.

In argument to the court, appellant merely noted that it was "just convenient" that the Hispanics happened to be young, without pointing out to the court significant information in the statement of facts and the transcript which casts doubts on the State's explanations to the court. The court overruled appellant's *Batson* challenge.

The statement of facts reflects that the only questions asked of all the jurors on the panel with Hispanic surnames by the State were the following:

STATE: Mr. Casarez, are you retired as well?

MR. CASAREZ: Yes.

\*    \*    \*    \*    \*    \*

STATE: Thank you. Mr. Nieto, where do you work?

MR. NIETO: Gary Job Corps.

A review of the juror information cards on each of the jurors, which form a part of the transcript, reveals that although jurors Shuler, Gregory, Stansberry and Hafley were retired like Casarez, only Casarez was struck by the State. Likewise, jurors Baughman, Turner, Lange, and McCarthy were unemployed, but were not struck by the State. Further, the information cards reveal that although jurors Brencick, Bond, Baumann, Peterson, and Hammond were all under thirty years of age, none were struck by the State. The State did, however, offer some explanation as to Peterson. Clearly, the complete failure of the State to question the Hispanics in any significant way, the failure of the record to support the State's explanation for the striking of Casarez, and the number of Anglo jurors who were under the age of 30, unemployed, and/or retired that were not struck by the State, makes the State's "permissible racially neutral selection criteria" explanation considerably suspect in my view, and casts serious doubts as to whether the State complied with its burden of "explain[ing] adequately the racial exclusions." *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721.

However, the appellant had the burden of bringing to the attention of the trial court all this information in order that the court could consider it prior to making its ruling. The trial court should never abandon its impartial role and seek out reasons to sustain motions on behalf of the State or the accused. Since this record does not indicate that the trial court was made aware of all of the foregoing, it's ruling cannot be found to be "clearly erroneous." *Whitsey,* at 726.

I concur with the results.

REEVES, Justice, concurring.

I concur with the majority opinion and with the concurring opinion. I also find difficulties with the State's explanations to the trial court under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, the appellant had the duty to point out to the court the facts the concurring opinion developed from the record; the trial court's ruling cannot be "clearly erroneous" without the record reflecting that the court's attention was directed to the facts contained in the record.