

IN THE
TENTH COURT OF APPEALS

_____

No. 10-13-00390-CR

LESTER DAVIS,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

_____

From the 12th District Court
Madison County, Texas
Trial Court No. 12-11716-012-06

_____

MEMORANDUM OPINION

_____

In two issues, appellant, Lester Davis, challenges his conviction for sexual assault

of a child, a second-degree felony.  *See* TEX. PENAL CODE ANN. § 22.011 (West 2011).  We

affirm.

## I.  BACKGROUND

In the instant case, appellant was charged by indictment with sexually assaulting

his step-daughter, who was thirteen years old when the alleged incidents transpired.

The indictment also referenced appellant's two prior felony convictions for delivery of a

controlled substance.

The case proceeded to a trial before a jury.  At the conclusion of the evidence, the jury found appellant guilty of the charged offense.  Appellant pleaded "true" to one of the enhancement paragraphs contained in the indictment.  The trial court sentenced appellant to forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  Thereafter, appellant filed several pro se, post-judgment motions, including a motion for new trial, which was denied by the trial court.  This appeal followed.

## II.  *BATSON* CHALLENGE

In his first issue, appellant, an African-American, contends that the trial court erred in denying his *Batson* challenge because the State's proffered race-neutral reasons to strike three potential, African-American jurors—Aretha Yvette Turner-Dunn, Marvin Craig, and Claude Nealy—were a pretext for discrimination.  *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

### A.  Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race."  *Id.* at 89, 106 S. Ct. at 1719.  A *Batson* challenge to a peremptory strike consists of three steps:  (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination.  *See Purkett v. Elem*,

514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

**B.    Discussion**

At the conclusion of voir dire, the State used three of its ten peremptory strikes to exclude Turner-Dunn, Craig, and Nealy from the jury. Thereafter, appellant made a *Batson* challenge to the State's use of its peremptory strikes, arguing that "the defendant in this case is a black defendant and that the State of Texas in their jury list has struck

the only three black juror venirepersons that are on the current jury list." The State responded by providing race-neutral explanations for using its peremptory strikes on Turner-Dunn, Craig, and Nealy.

### 1. Venireperson Aretha Yvette Turner-Dunn

With respect to Turner-Dunn, the State asserted that "she knows the entire family. And just the fact she knows all the family, knows Mr. Davis, knows the victim, I just didn't want to run the risk of her being biased one way or the other because she has basic knowledge of the workings of the family." A review of the transcript from voir dire shows that Turner-Dunn stated that she grew up in the same neighborhood as appellant and that she "know[s] of him and his family." Texas courts have stated that a personal acquaintance with a defendant is a racially-neutral reason for exercising a peremptory strike. *See Wilson v. State*, 854 S.W.2d 270, 273 (Tex. App.—Amarillo 1993, pet. ref'd) (citing *DeBlanc v. State*, 799 S.W.2d 701, 711-13 (Tex. Crim. App. 1990); *Keeton v. State*, 749 S.W.2d 861, 875-76 (Tex. Crim. App. 1988); *Dixon v. State*, 828 S.W.2d 42, 46 (Tex. App.—Tyler 1991, pet. ref'd)); *see also James v. State*, No. 06-04-00155-CR, 2005 Tex. App. LEXIS 9246, at *10 (Tex. App.—Texarkana Nov. 8, 2005, no pet.) (mem. op., not designated for publication). Though he had the burden of affirmatively proving that the prosecutor's racially-neutral explanation was a pretext or sham, appellant did not offer any evidence at trial to refute the prosecutor's explanation. *See Whitfield v. State*, 408 S.W.3d 709, 716 (Tex. App.—Eastland 2013, pet. ref'd); *Dixon*, 828 S.W.2d at 46; *see also Ford*, 1 S.W.3d at 693. The fact that appellant simply stated his disagreement with the prosecutor's explanation is not enough. *Whitfield*, 408 S.W.3d at 716; *Dixon*, 828

S.W.2d at 46. Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge to the State's striking of Turner-Dunn, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson v. State*, No. 10-12-00076-CR, 2012 Tex. App. LEXIS 10581, at **2-3 (Tex. App.—Waco Dec. 20, 2012, no pet.) (mem. op., not designated for publication).

### 2. Venireperson Marvin Craig

In response to appellant's *Batson* challenge of Craig, the State argued that:

> Mr. Craig, he said he's always said he was related to them. He said that he was like his uncle, his step father, he was related to him.
>
> He also said at one point in time, a brother and another family member had an impact with law enforcement. In fact, he said he had to be in court on Friday of this week concerning a family member in the 278th[,] if I heard that correctly.

Indeed, the record of voir dire reflects that Craig is related to appellant's family by marriage. Specifically, Craig noted that his uncle is appellant's step father. In addition, Craig indicated that his brother previously had a bad experience with law enforcement.

Once again, we note that a personal acquaintance with a defendant is a racially-neutral reason for exercising a peremptory strike. *See Wilson*, 854 S.W.2d at 273 (citing *DeBlanc*, 799 S.W.2d at 711-13; *Keeton*, 749 S.W.2d at 875-76; *Dixon*, 828 S.W.2d at 46); *see also James*, 2005 Tex. App. LEXIS 9246, at *10. Furthermore, appellant did not offer proof to affirmatively demonstrate that the prosecutor's race-neutral explanation was a sham or pretext. *See Ford*, 1 S.W.3d at 693. Thus, according great deference to the trial court's

denial of appellant's *Batson* challenge to the State's striking of Craig, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous.  *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson*, 2012 Tex. App. LEXIS 10581, at **2-3.

### 3.     Venireperson Claude Nealy

During voir dire, the State questioned the entire venire panel on whether each prospective juror would require the State to produce DNA, medical, or some other form of scientific evidence at trial to prove that a sexual assault actually occurred.  In response to this question, Nealy was one of several venirepersons who stated that he would require DNA, medical, or some other form of scientific evidence to find someone guilty for sexual assault.  Specifically, Nealy stated the following:  "Well, it's not a requirement, but if it's an under age child[,] I would like to see [DNA, medical, or some other form of scientific evidence]."  Nealy was then asked if he could convict somebody of sexual assault without any medical or DNA evidence; Nealy responded, "Perhaps, you know, it all depends on the evidence . . . .  If I believed the witness[,] I can convict, yeah."

In response to appellant's *Batson* challenge, the State proffered the following race-neutral explanation for striking Nealy:

> Then with respect to 38, he was one of the ones who originally indicated that he had problems with that we need a medical or a DNA test and that I just felt uncomfortable with his answer.  He was kind of waffling back and forth concerning his need for a medical test.  And I have again looked at my notes and I have no notation on whether or not someone is any race, color[,] or anything.

Appellant did not refute the State's race-neutral explanation or demonstrate that the

Davis v. State                                                                                                    Page 6

State's explanation was merely a pretext for discrimination. *See Ford*, 1 S.W.3d at 693. Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge as to Nealy, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson*, 2012 Tex. App. LEXIS 10581, at **2-3. And because we have concluded that the trial court's denial of appellant's *Batson* challenges was not clearly erroneous, we overrule appellant's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, appellant contends that his trial counsel was ineffective because he did not take appropriate action to prevent the introduction of appellant's HIV status at trial.

### A. Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.* To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, appellant must show that

there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial court counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible

speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—

Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's

decisions, a record on direct appeal will rarely contain sufficient information to evaluate

an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App.

2002). To warrant reversal without affording counsel an opportunity to explain his

actions, "the challenged conduct must be 'so outrageous that no competent attorney

would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007)

(quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Though the

record is silent as to the reasons for trial counsel's conduct, we will examine the record

to determine if trial counsel's conduct was "'so outrageous that no competent attorney

would have engaged in it.'"[1] *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

### B.    Discussion

On appeal, appellant complains that his trial counsel failed to obtain a ruling on

his pre-trial motion in limine, which sought to exclude evidence pertaining to

appellant's HIV status. Additionally, appellant contends that his trial counsel was

ineffective for failing to object when the State elicited testimony regarding appellant's

HIV status.

The record reflects that appellant filed a motion in limine on January 7, 2013, and

in this motion, appellant requested the exclusion of, among other things, any mention

"of the existence of, or the transmission of the human immunodeficiency virus (HIV)

[i]nfection and other sexually transmitted diseases by the defendant, LESTER DAVIS,

---

[1] Interestingly, appellant filed several pro se post-judgment motions; none of appellant's pro se motions alleged that his trial counsel was ineffective.

towards the alleged victim in the above entitled cause." However, the trial court deferred ruling on appellant's motion in limine, and ultimately, appellant's trial counsel did not procure a ruling from the trial court on the motion.

At trial, the State elicited the following testimony from the child victim:

[Prosecutor]: And tell us what event in your life made you decide to come tell someone.

[Child victim]: I was at the doctor in—I was going to get my usual check up for my Depo shot and that's when my doctor had told me that I was HIV positive.

[Prosecutor]: Okay. So when you learned you were HIV positive, what went through your mind?

[Child victim]: That I was 18 and my life just completely ended.

[Prosecutor]: Okay. Let me ask you this: Prior to the date you found out you had HIV, had you ever had sexual intercourse with any other person other than Lester Davis?

[Child victim]: No, sir.

[Prosecutor]: As we sit here today, have you ever had sex with any other person other than Lester Davis?

[Child victim]: No, sir.

[Prosecutor]: Have you ever taken any type of illegal drugs?

[Child victim]: No, sir.

[Prosecutor]: Have you ever shared needles with anybody?

[Child victim]: No, sir.

Appellant's trial counsel did not object to this exchange. However, on cross-examination, the child victim admitted that she had been taking birth-control

medication since she was thirteen years old because she was sexually active with older boys.  And in response to appellant's trial counsel's questions, the child victim acknowledged that she had sent topless pictures of herself to at least one other boy.

At no point did any witness specifically allege that appellant has HIV.  In any event, it is reasonably possible that trial counsel did not wish to draw the jury's attention to the possibility that appellant had infected the child victim with HIV.  Instead, trial counsel elicited testimony that the child victim had been sexually active with other boys since she was thirteen, which could have supported an inference that the child victim was infected with HIV by someone other than appellant or that the child victim was lying about the fact that she had only had sex with appellant.  In fact, during closing argument, appellant's trial counsel alleged that the State attempted to obscure the fact that the child victim engaged in sexual conduct with boys at her school. Thus, even though the record is silent as to trial counsel's strategy, we cannot say that the complained-of actions were so outrageous that no competent attorney would have engaged in them.  *See Roberts*, 220 S.W.3d at 533; *see also Goodspeed*, 187 S.W.3d at 392.

In any event, but for trial counsel's purported errors, the outcome of the trial likely would not have been different, especially given that the testimony of a child victim is sufficient to support a conviction for aggravated sexual assault.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett*, 65 S.W.3d at 62-63; *Thompson*, 9 S.W.3d at 812; *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex.

App.—Dallas 1994, no pet.); *see also Dale v. State*, Nos. 10-11-00380-CR, 10-11-00381-CR, 2012 Tex. App. LEXIS 3127, at **24-25 (Tex. App.—Waco Apr. 18, 2012, pet. ref'd) (mem. op., not designated for publication). Here, the child victim testified that she was sexually assaulted by appellant more than fifty times over four years. Moreover, a review of the record shows that appellant's trial counsel actively participated in voir dire, cross-examined the State's witnesses, and presented a defense case that included numerous witnesses. Therefore, because the record is silent as to trial counsel's strategy, and because we look to the totality of the representation, we cannot say that appellant has satisfied his burden of proving by a preponderance of the evidence that his trial counsel was ineffective. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson*, 9 S.W.3d at 813; *see also Gamble*, 916 S.W.2d at 92. We overrule appellant's second issue.

## IV. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed June 26, 2014
Do not publish
[CRPM]