**Opinion filed August 30, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00230-CR
_____

## THOMAS EARL WHITFIELD, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 441st District Court
### Midland County, Texas
### Trial Court Cause No. CR38679

### O P I N I O N

The jury found Thomas Earl Whitfield guilty of the offense of aggravated assault causing bodily injury with a deadly weapon. The trial court found "true" to four enhancement paragraphs and assessed Appellant's punishment at confinement for fifty years. The trial court then sentenced him accordingly. We affirm.

Appellant presents us with two issues on appeal: that the trial court erred when it (1) overruled his *Batson*[1] objection to the State's use of its peremptory challenges and (2) refused to charge the jury on the lesser included offense of deadly conduct.

## I. *Background*

There was testimony that Appellant and a man named Tyzell Clater had fought each other before. On the date of the offense, Appellant went to an apartment complex looking for another fight with Clater. Appellant found him outside the apartments.

Saul Dunn had been inside Clater's apartment in that same complex. Clater's mother, Linda Kay Reed, and his sisters, Trynequa Robinson and T.G.[2] shared the apartment with Clater. Dunn came out of the apartment and was looking for Clater when Appellant's sons, Diantrel and Devontae Brown, "jumped" him. Either Diantrel or Devontae hit Dunn in the face, and both of the brothers began to hit and kick him. Reed called the police.

Trynequa testified that, about the same time as the fight between Diantrel and Devontae and Dunn broke out, she saw Appellant going toward Clater; Appellant had a knife, and she called out to warn him. Clater backed away from Appellant. Appellant turned around, saw his two sons fighting with Dunn, and went to help them. There was testimony that, as Diantrel and Devontae held Dunn down on the ground, Appellant sat on top of him and cut him across his stomach. Dunn said that, after "feeling something go across his stomach," he heard Appellant say, "I got it." When Dunn got up from the ground, the men stopped hitting him.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] T.G. is a minor.

Dunn, Clater, Trynequa, and T.G. each testified that they saw Appellant make a sawing motion while Appellant was on top of Dunn, and each of them said that Appellant stabbed Dunn. A.T.,[3] who also was at the apartment when Appellant arrived, testified that she did not see Appellant with a knife but that she saw Diantrel or Devontae stab Dunn while Appellant and the other brother held Dunn down on the ground. Appellant admitted to his girlfriend that he was there during the assault, but Appellant denied that he had a knife and that he stabbed or cut Dunn. After the fight, Appellant and his two sons left. Medical personnel took Dunn by ambulance to the hospital where doctors treated and stapled wounds to his stomach, leg, and side.

## II. *Batson Challenge*

Appellant contends in his first issue that the trial court improperly overruled his *Batson* challenge of the State's use of its peremptory challenges. Appellant contends that the State struck six potential jurors solely because they were Hispanic and that such action was in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The racial identity of the defendant "is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges." *Powers v. Ohio*, 499 U.S. 400, 416 (1991). On appeal, Appellant challenges the State's use of its peremptory challenges against four of those potential jurors. The State denies using any of its peremptory strikes improperly.

When we review a trial court's ruling on a *Batson* challenge, we examine the evidence in the light most favorable to the trial court's ruling and determine whether the record supports the trial court's findings. *See Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim. App. 1988). Our review of the record is "highly deferential" to the trial court. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We reverse a trial court's ruling only if it was "clearly erroneous."

---

[3] A.T. is a minor.

*Id.* A ruling is "'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989).

Three steps are involved in a proper challenge of the State's use of peremptory strikes. First, a defendant must make a prima facie showing of purposeful discrimination by offering facts and other relevant circumstances to raise an inference that the prosecutor exercised his peremptory strikes to exclude potential jurors for their race, ethnicity, or gender. *Batson*, 476 U.S. at 96; *Guzman v. State*, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002).

After the court finds that a prima facie case has been made, the second step involves two parts: A and B. Part A shifts the burden of production to the proponent of the strike to rebut the prima facie case of discrimination by offering "a neutral explanation for the challenges," while Part B requires the opponent to carry the burden of persuasion that the neutral explanation given is "pretext." *Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim. App. 1987); *see Batson*, 476 U.S. at 97–98. A neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). If the State offers facially valid explanations for its strikes, it has rebutted the presumption of purposeful discrimination. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991).

In the final step, the trial court must "determine whether despite the State's explanation, the defendant has established purposeful discrimination." *Keeton*, 724 S.W.2d at 65 (court must rule on whether opponent proved purposeful discrimination); *see Williams*, 804 S.W.2d at 101 (burden on opponent to show

4

pretext); *see also Guzman*, 85 S.W.3d at 254. After it considers the credibility of the prosecutor, the content of the explanation, any rebuttal evidence or argument offered by the defendant, the trial court must make a finding of fact concerning whether the State engaged in purposeful discrimination in the exercise of its peremptory challenges. We "give[] great deference" to that finding. *Keeton*, 724 S.W.2d at 65. When the prosecutor offers a race-neutral explanation and the trial court rules on the *Batson* challenge, whether a prima facie case was made is moot. *See Hernandez*, 500 U.S. at 358; *see also Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).

Here, after Appellant and the prosecutor delivered their strike lists to the trial court, Appellant objected to the State's use of peremptory strikes against six Hispanic members of the venire. Without ruling on whether Appellant had shown discrimination, the trial court asked the prosecutor for his nondiscriminatory reasons for the strikes. The prosecutor explained that he struck all four prospective jurors about which Appellant complains on appeal because of a lack of education and that he also struck three of those four based on age. The trial court overruled Appellant's *Batson* challenges.

Appellant contends that the trial court's finding was erroneous because "[t]he State failed to show the reasons offered, as to each of the venirepersons struck by the State, were race neutral." Appellant cites *Chivers v. State* for the proposition that the State cannot strike a juror based on lack of education "without a showing on the record of such venireman's lack of intelligence," and he argues that "there was no such showing" as to four of the stricken veniremen. *See Chivers v. State*, 796 S.W.2d 539 (Tex. App.—Dallas 1990, pet. ref'd).

The Supreme Court rejected this argument in *Purkett v. Elem*, where it stated that the second step of a *Batson* challenge "does not demand an explanation that is persuasive, or even plausible." 514 U.S. 765, 767–68 (1995). Instead, "the issue is

the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* at 768 (quoting *Hernandez*, 500 U.S. at 360). The Court further explained:

> The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a "plausible" basis for believing that "the person's ability to perform his or her duties as a juror" will be affected. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step three is quite different from saying that a trial judge *must terminate* the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Id.* (citations omitted). Although the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson*, 476 U.S. at 98, n.20, and although the reason must be "related to the particular case to be tried," 476 U.S. at 98, the Court has explained that "[t]his warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive." *Purkett*, 514 U.S. at 769. A "'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Id.*

The Court of Criminal Appeals has explained that the burden that shifts between the opponent and the proponent of the strike is the burden of production; the opponent of the strike must produce sufficient evidence to establish a prima facie case, and the burden shifts to the proponent to offer a race-neutral

6

explanation. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). The court further instructed:

> If a race-neutral explanation is proffered, then the third step occurs: the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination. This is the step regarding the burden of persuasion. The Supreme Court stressed that the "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Id.* (quoting *Purkett*, 514 U.S. at 768). To sustain the burden of persuasion, the opponent of a strike must show that the reasons offered were pretext or were not race neutral, "thus rebutting any race neutral explanation given at the *Batson* hearing." *Williams*, 804 S.W.2d at 101.

The prosecutor's explanation in this case—that he struck the four veniremen because of lack of education or age—is race neutral; it satisfies the prosecutor's burden under the second step that requires articulation of a nondiscriminatory reason for the strike. *See Whitsey*, 796 S.W.2d at 715–16 (stating age is one of the permissible "nondiscriminatory reasons" for striking a panelist from the venire); *Holt v. State*, 912 S.W.2d 294, 300–01 (Tex. App.—San Antonio 1995, pet. ref'd) (stating lack of education is a race-neutral explanation for a peremptory strike). Therefore, the burden shifted back to Appellant to rebut the State's explanations or show that the explanations were merely pretext. *See Williams*, 804 S.W.2d at 101.

Appellant relied solely upon six Hispanic veniremen having been peremptorily challenged when he made his *Batson* objection. He identified no other facts or circumstances to support his claim of discrimination. He did not cross-examine the prosecutor, present any evidence to otherwise rebut the State's explanations, or ask for an opportunity to do so. The State's reasons for striking the panelists were facially plausible and not contradicted. *See Purkett*, 514 U.S. at 769–70 (explaining that, unless discriminatory intent is inherent in the explanation,

7

it will be deemed race neutral). Appellant did not offer the juror information cards into evidence and has not directed us to any other evidence in the record showing that the reasons given were pretext for a racially motivated strike. *Compare Young v. State*, 826 S.W.2d 141, 145–46 (Tex. Crim. App. 1991) (urging parties to make comparisons of the discrepancies between the proffered reasons and the relevant circumstances during voir dire as part of rebuttal but permitting the parties for the first time on appeal to give "the appellate court a more accurate picture of the voir dire than a cold record") *with Vargas v. State*, 838 S.W.2d 552, 556–57 (Tex. Crim. App. 1992) (explaining that a comparison is appropriate to find discrepancies between the stated reason and the jury answers during voir dire but that it is not appropriate to find discrepancies based on answers found on jury information cards unless those answers were "introduced into evidence or elicited before the trial judge during the voir dire"). We conclude that Appellant did not meet his burden to rebut the State's explanation or show that the explanation was merely pretext. *See Ford*, 1 S.W.3d at 694. Because we are not left with the "definite and firm conviction that a mistake has been committed," we cannot conclude that the trial court's decision on Appellant's *Batson* challenge was clearly erroneous. *See Hill*, 827 S.W.2d at 865. Appellant's first issue is overruled.

### III. *Deadly Conduct*

Appellant argues in his second issue that the trial court failed to instruct the jury on the lesser included offense of deadly conduct. Upon the request of a defendant, the trial court should instruct the jury on a lesser included offense if "(1) the requested charge is for a lesser-included offense of the charged offense and (2) there is some evidence that, if the defendant is guilty, [he] is guilty *only* of the lesser offense." *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (emphasis added). The first step in the analysis requires us to "compare the elements of the charged offense . . . with the elements of the lesser offense that

8

might be added to the jury charge," considering no evidence that was offered or admitted. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). If the offense constitutes a lesser included offense, then the second step requires us to consider all of the evidence admitted to determine if "there is some evidence that would support a rational finding that the defendant is guilty *only* of the lesser included offense." *Id.* at 188–89. If both requirements are met, the trial court must instruct the jury on the lesser included offense. *Id.* at 189.

Deadly conduct can be a lesser included offense of aggravated assault. *See Ford v. State*, 38 S.W.3d 836, 845 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). Appellant contends that deadly conduct is a lesser included offense because it "is basically the same offense as aggravated assault, except that it has a less culpable mental state," and he cites *Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985), to support his argument. The State contends that Appellant's reliance on *Bell* is misplaced because it involved "an assault by threat not an assault involving bodily injury," as alleged in this case, and that proving actual bodily injury is different from proving a danger of imminent serious bodily injury.

Although the State is correct that the assault in *Bell* was by threat and is distinguishable from assault causing bodily injury, the issue there turned on the use of a deadly weapon. The Court of Criminal Appeals explained that "[t]he *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense." *Bell*, 693 S.W.2d at 438. The court concluded that "proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury." *Id.* at 438–39. If we apply the same reasoning,

an accused who *caused* bodily injury with a deadly weapon, as alleged in the indictment here, placed the victim in imminent danger of serious bodily injury. *See Ford*, 38 S.W.3d at 845 (holding it was not error for the trial court to include, at the State's request, an instruction on deadly conduct in a trial for aggravated assault where the victim suffered bodily injury).

The State argues that deadly conduct encompasses acts that "fall short of harming another" and that, if an injury actually occurs, the actions do not constitute deadly conduct. The Court of Criminal Appeals, however, rejected this argument in *Guzman*, 188 S.W.3d at 190–91 n.11. The court recognized that several courts of appeals have held this way, but it concluded that establishing the offense of "deadly conduct neither requires nor excludes proof of physical injury." *Guzman*, 188 S.W.3d at 191 n.11 (citing *Ford*, 38 S.W.3d at 845).

To prove that Appellant committed aggravated assault as alleged in the indictment, the evidence would have to show that Appellant (1) intentionally, knowingly, or recklessly caused bodily injury to Dunn by stabbing, hitting, kicking, or pushing him and (2) used or exhibited a deadly weapon during the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). To prove the offense of deadly conduct, the evidence would have to show that Appellant acted recklessly and that he placed the victim in imminent danger of serious bodily injury by stabbing, hitting, kicking, or pushing the victim, whether he actually caused serious bodily injury or any bodily injury at all. *See id.* § 22.05(a); *Guzman*, 188 S.W.3d at 191. The culpable mental state for a crime may be intentional, knowing, or reckless, and the Texas Court of Criminal Appeals has held that recklessness is the culpable mental state for "both aggravated assault and deadly conduct." *Guzman*, 188 S.W.3d at 190. Because both offenses require recklessness and because the use of a deadly weapon in committing assault places the victim in imminent danger of serious bodily injury, the offense of deadly

10

conduct is established by proof of the same or less than all the facts that prove aggravated assault. *See* CRIM. PROC. art. 37.09(1). We conclude that the offense of deadly conduct satisfies the first step of the test.

We must now consider whether evidence in the record would permit a jury to rationally find that Appellant was guilty only of deadly conduct and not aggravated assault. *See Guzman*, 188 S.W.3d at 192. Before an instruction is warranted, "'[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider.'" *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (alteration in original) (quoting *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). We consider all of the evidence admitted to determine whether "the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* If evidence from any source raises the issue of a lesser included offense, a charge on that lesser offense must be included in the jury charge, whether the evidence is introduced by the State or the defense and whether it is strong, weak, impeached, or contradicted. *Bell*, 693 S.W.2d at 442. When we determine whether such an instruction should have been given, we do not consider whether the evidence is credible, whether it conflicts with other evidence, or whether it has been controverted. *Goad*, 354 S.W.3d at 447 n.17 (citing *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

Appellant argues that the evidence raises the possibility that he acted recklessly because A.T. testified that Appellant had not stabbed Dunn. He contends that "[l]ogic and reason dictate that if Appellant only kicked and punched Saul Dunn, Appellant was 'reckless' when placing Saul Dunn in imminent danger of serious bodily injury." The prosecutor asked whether she ever saw Appellant assault Dunn, and A.T. said that she saw Appellant "punching him, beating him up while one of the sons was stabbing him." A.T. also told the jury that she saw Appellant kicking Dunn.

11

Appellant's argument fails because the evidence indicating that Appellant hit and kicked Dunn—but did not stab Dunn—does not constitute evidence that Appellant recklessly engaged in conduct. One of the elements of the offense of deadly conduct in Section 22.05(a) of the Penal Code is "recklessly engag[ing] in conduct." A person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." PENAL § 6.03(c). Appellant did not testify at trial, nor is there any evidence in the record that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that the circumstances existed or the result would occur. Because there was no evidence from which a rational juror could infer that Appellant's actions were merely reckless, instead of knowing or intentional, Appellant was not entitled to an instruction on the lesser included offense of deadly conduct. *See Flores v. State*, 245 S.W.3d 432, 441 (Tex. Crim. App. 2008); *Tompkins v. State*, 774 S.W.2d 195, 212 (Tex. Crim. App. 1987); *Duncan v. State*, No. 04-10-00870-CR, 2011 WL 3918888 (Tex. App.—San Antonio Sept. 7, 2011, pet. ref'd) (mem. op., not designated for publication); *Benavides v. State*, No. 08-07-00193-CR, 2009 WL 3031175 (Tex. App.—El Paso Sept. 23, 2009, pet. ref'd) (not designated for publication).

We note that, based on the evidence that Appellant did not have a knife and did not stab Dunn but only hit and kicked Dunn, Appellant requested and received a lesser included charge on misdemeanor assault. The trial court's charge authorized the jury to find Appellant guilty of the lesser included offense of assault causing bodily injury if it found that Appellant intentionally, knowingly, or recklessly caused bodily injury to Dunn by hitting or kicking him or by pushing him to the ground.

Because the evidence does not show that, if guilty, Appellant could have been guilty only of deadly conduct, the trial court did not err in refusing to submit a charge on the lesser included offense of deadly conduct. Appellant's second issue is overruled.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

August 30, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.