# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00499-CR

**Brian Lee Velasquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2016-722, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brian Lee Velasquez was convicted by a jury of the second-degree felony offense of aggravated assault with a deadly weapon. *See* Tex. Penal Code § 22.02(a)(2). Based on Velasquez's pleas, the trial court found the enhancement paragraphs alleging prior offenses true and assessed punishment based on the habitual offender range. *See id.* § 12.42(d). The trial court assessed punishment at 55 years in prison. Velasquez raises three issues on appeal, challenging the trial court's admission of testimony regarding prior bad acts, refusal to provide a lesser-included offense instruction, and application of what he asserts was an incorrect self-defense instruction. We will affirm the trial court's judgment.

## BACKGROUND

On December 14, 2014, Velasquez undisputedly used a knife to slice a finger and stab the abdomen of Derrick McKinnis. The main disputed fact issue at trial was whether

Velasquez's assault was justified self-defense against McKinnis's allegedly unlawful use of force, or whether McKinnis's use of force against Velasquez was the justified and lawful defense protecting Maranda Martinez[1] against Velasquez's alleged assault on her.

On December 13, 2014, McKinnis and Martinez—then in the third year of dating—went to visit Martinez's aunt, Monica Avila, and Velasquez, Avila's boyfriend, at their apartment in New Braunfels. McKinnis and Martinez intended to stay overnight. As the evening wore on, Avila went to bed because she needed to rise early for her job, and Martinez was also ready to sleep. McKinnis and Velasquez, however, were drinking together and were not ready to end the evening. Martinez urged McKinnis to come to bed, McKinnis resisted, and Velasquez told Martinez she should not tell McKinnis what to do.

After arguing with Velasquez and McKinnis, Martinez decided to go home, so she went to the bedroom to tell her aunt she was leaving and would return in the morning to get McKinnis. Velasquez did not want her to wake Avila, who was a heavy sleeper and had difficulty getting back to sleep. Velasquez followed Martinez into the bedroom and called her unpleasant names. In response, Martinez punched him in the face. Velasquez then swung at Martinez; she blocked the blow with her arm, but the force knocked her down. McKinnis heard a loud thump from the bedroom, so he went to investigate. When he got to the bedroom door, McKinnis saw Martinez on the floor with her hands covering her face and with Velasquez "looming over her." McKinnis testified that Velasquez's hands were curled into fists, and so he started hitting Velasquez to defend her. Velasquez denied his hands were curled into fists, but agreed that "it would look that way, the way [McKinnis] interpreted it"—that Velasquez had just struck Martinez and that he might continue to do so.

---

[1] Maranda Martinez had married and taken the last name Perez by the time of trial.

Velasquez and McKinnis tussled and fell onto the bed, with McKinnis continuing to hit him. They rolled off the other side of the bed and McKinnis was behind and on top of Velasquez. McKinnis put his arm around Velasquez's neck and began to squeeze. McKinnis testified that he was telling Velasquez to calm down, but Velasquez testified that he did not hear McKinnis say those words and that instead he was telling McKinnis to stop. McKinnis held Velasquez in this position for fifteen to twenty seconds. He testified that he was not squeezing hard enough to stop Velasquez's breathing, but was trying to knock him out. Velasquez testified that he felt like he was close to not being able to breathe and that he feared McKinnis could crush his windpipe.

At some point, either as they were rolling or once they reached the floor, Velasquez pulled out and opened his knife. He began swinging the knife at McKinnis and cut McKinnis's nose and finger, the latter deeply enough to sever a tendon, causing McKinnis to release Velasquez and back away. At some point, Velasquez also cut Avila, who was trying to restrain him. McKinnis testified that he stood with his hands up telling Velasquez, "I'm here to help you," and did not threaten him. Velasquez testified that McKinnis said nothing and started moving toward him. McKinnis said Velasquez moved toward him[2] and stabbed him in the abdomen, nicking his liver and opening a 1.5-inch gap that allowed his intestine to protrude.

McKinnis and Martinez fled the apartment, then stopped in the parking area to call for help. Velasquez and Avila also left the apartment. Martinez asked Avila for the address to tell 911, but Avila and Velasquez got into a car and left without providing the information. Neighbors provided the information but had already called 911 to report the disturbance.

_____

[2] Velasquez said both men moved toward each other, while McKinnis said Velasquez was the only one moving.

Avila dropped Velasquez off a couple of blocks away, and he walked to a nearby house where Avila's friend, Sandra Mendoza, lived. Mendoza testified that Velasquez was shirtless and that he said police were after him because he had stabbed McKinnis. He told Mendoza that Martinez "went at him," then McKinnis "went at him," so he stabbed McKinnis maybe three times. She wanted to go to the apartment to check on Avila, and Velasquez accompanied her even though she told him not to come. They pretended they were a couple, holding hands as they approached the police on scene.

Velasquez told police he had been in Austin all day and denied being at Avila's apartment. He told them his sister had just dropped him off at Mendoza's house. Despite the dried blood on his jawline and hands that did not correspond to any injuries on his body, he denied to police that he had been in an altercation. Velasquez testified that his nose bled, but that his injuries were not serious. He testified that he did not discard the knife and that police should have found it in the apartment, but he admitted that he got rid of the t-shirt somewhere and that he lied to police when he told them that he did not carry a knife.

## DISCUSSION

Velasquez raises three issues on appeal. He contends that the trial court erred by allowing testimony about prior bad acts, by failing to instruct the jury on the lesser-included offense of deadly conduct, and by applying the wrong self-defense instruction.

**Testimony about prior bad acts.**

When directly examining McKinnis, the prosecutor approached the bench to ask permission to inquire about matters covered by a motion in limine—namely, Velasquez's propensity to carry a knife or his prior convictions. The trial court ruled that Velasquez's claim

4

of and questions about self-defense had opened the door, allowing the State to ask, "Had the defendant made any statements to you about using knives in the context of a fistfight?" Velasquez objected that the question violated Texas Rules of Evidence 404(b) and 403.[3] The court overruled the objection.

We review trial-court rulings on admissibility of evidence for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We must uphold the trial court's admission of evidence unless it is outside the zone of reasonable disagreement. *Id*.

**Texas Rule of Evidence 404(b).**

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that the person acted in conformity with that character, but may be admitted to prove motive, opportunity, intent, preparation, plan, absence of mistake, or lack of accident. Tex. R. Evid. 404(b). Though not evidence, defensive theories presented in a defendant's opening statement can open the door for admission of evidence of an extraneous offense as rebuttal evidence during the State's case-in-chief. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). "When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor." *Lemmons v. State*, 75 S.W.3d 513, 523 (Tex. App.—San Antonio 2002, pet. ref'd).

Velasquez raised self-defense in his opening statement, opening the door to admission of evidence of extraneous offenses. McKinnis testified that before the night of this incident, Velasquez had told him "he couldn't fight, so he would always carry a knife with him."

---

[3] Counsel stated that the question violated "Rule 404(3)," which does not exist, but the explanation at trial that the prejudicial effect would far outweigh the relevance and probative value comports with the substance of Texas Rule of Evidence 403.

McKinnis testified that Velasquez also said, in a somewhat bragging manner, that he had stabbed someone in a fight. McKinnis testified that these prior statements made him concerned about the knife that he knew Velasquez carried.

Velasquez contends that this evidence should be excluded because it was offered to show that he used the knife because of character conformity, not in response to being choked and punched by McKinnis. The State argues that it adduced the testimony to show the reasonableness—and thus the lawfulness—of McKinnis's perception that he needed to use force to defend Martinez. Though McKinnis did not see Velasquez make contact with Martinez, he knew they had been arguing, heard a loud boom from the bedroom where they both were, and entered the room to see Velasquez leaning over Martinez, who was on the ground and had her hands up in a defensive position; regardless of whether Velasquez had his hands in fists, even Velasquez agreed that it would be reasonable for McKinnis to assume that Velasquez "had probably just struck Maranda and there was a possibility that you might continue to do that because [he was] standing bent over towards her while she's on the ground." The lawfulness of the force used to defend a third party is relevant to Velasquez's theory that he was entitled to defend himself from an *unlawful* use of force. *See* Tex. Penal Code §§ 9.31(a) (self-defense), 9.33 (defense of third person).

The trial court did not abuse its discretion by allowing the State to rebut the self-defense claim by showing evidence of other violent acts where the defendant was an aggressor. *Lemmons*, 75 S.W.3d at 523. Further, the trial court did not abuse its discretion by allowing the State to prove opportunity, intent, and absence of mistake or lack of accident in Velasquez's use of the knife through Velasquez's statement that he carried a knife and used it to stab someone during a physical confrontation because he was not good at fistfighting. *See* Tex. R. Evid. 404(b).

6

**Texas Rule of Evidence 403.**

Velasquez objected at trial that the prejudicial effect of the response to the question of statements about using knives in the context of a fistfight would far outweigh the relevance and probative value. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice.[4] *Id.* R. 403.

To determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, we assess four factors: 1) how compellingly the extraneous offense evidence makes a fact of consequence more or less probable; 2) the potential the extraneous offense evidence has to impress the jury in some irrational and indelible way; 3) the time the proponent needed to develop the evidence during which the jury would be distracted from consideration of the indicted offense; and 4) the force of the proponent's need for this evidence to prove a fact of consequence—i.e., is there other probative evidence available to establish the fact of consequence. *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000). "Probative value" is the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation— coupled with the proponent's need for that item of evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Id.* at 879-80. Evidence might be unfairly prejudicial if it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Id.*

---

[4] Although Velasquez does not specify in his appellate brief that he asserts the "unfair prejudice" aspect of Texas Rule of Evidence 403, that was the sole basis of his Rule 403 objection at trial. (As the State notes in its brief, the objection at trial and the appellant's brief used different rule numbers, but the terms and context make clear that Velasquez's objection is based on Texas Rule of Evidence 403.)

Evidence that Velasquez carries a knife because he is not good at fistfighting tends to show the reasonableness of McKinnis's belief that, since Velasquez might pull out a knife in a physical confrontation, McKinnis's intervention was immediately necessary to protect Martinez from a use of unlawful force. The evidence of Velasquez's behavior in other situations might make an impression on the jury, but not in an irrational but indelible way. *See Davison v. State*, 602 S.W.3d 625, 653 (Tex. App.—Texarkana 2020, pet. ref'd). Here, the evidence is rationally related to the elements of the offense and defense. The disputed evidence in this case did not take much time to develop—at most, two of the 378 pages in the reporter's record of the evidentiary part of the guilt/innocence phase of trial—and did not distract the jury from consideration of the indicted offense. Asking McKinnis what Velasquez had told him about carrying a knife to use during physical confrontations was the best way to develop evidence of what was in McKinnis's mind regarding his need to defend Martinez from a physical confrontation with Velasquez.

Weighing the Rule 403 factors, we conclude that the trial court did not abuse its discretion by admitting the evidence of Velasquez's statements regarding his history of carrying knives for protection during physical confrontations.

We overrule Velasquez's second issue on appeal.

**The court did not err by refusing to instruct the jury on deadly conduct.**

The trial court denied Velasquez's request for an instruction on deadly conduct as a lesser-included offense of aggravated assault. He contends this denial was error.

When considering whether to instruct the jury on a lesser-included offense, trial courts must first decide as a matter of law if the elements of the offense for which the charge

8

is requested are included within the proof necessary for the charged offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). An offense is a lesser-included offense of another if it meets one of four statutory criteria, including (as Velasquez contends) that it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. Tex. Code Crim. Proc. art. 37.09(1). We review the trial court's decision on the first requirement as a matter of law. *Bullock*, 509 S.W.3d at 924. If the offense is included within the other, the court must then decide if some evidence in the record would allow the jury to determine that the defendant is guilty only of the lesser-included offense—in other words, whether the evidence supports the giving of an instruction. *Id.* at 925. The record supports giving the instruction if there is more than a scintilla of evidence that refutes or negates other evidence establishing the greater offense. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We review the court's decision on the evidence for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). *But see Goad v. State*, 354 S.W.3d 443, 447 (Tex. Crim. App. 2011) (indicating some question whether abuse of discretion is the proper standard, but not reaching the issue).

Velasquez urges that the Court of Criminal Appeals has held that deadly conduct is a lesser-included offense of aggravated assault when the latter is allegedly committed by threatening the victim with serious bodily injury, citing *Safian v. State*, 543 S.W.3d 216, 220-23 (Tex. Crim. App. 2018), which relies on *Bell v.* State, 693 S.W.2d 434, 438-43 (Tex. Crim. App. 1985). When a penal statute defines more than one way in which an offense can be committed, an allegation that the offense has been committed in one way can include a lesser offense, while an allegation that the offense was committed in another way might not include the lesser offense. *Ford v. State*, 38 S.W.3d 836, 842-43 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing

*Bell*, 693 S.W.2d at 436). The State argues that *Safian* and *Bell* do not control cases like this one in which the assault is committed by causing injury.

Courts of appeals have held that deadly conduct is also a lesser-included offense of an aggravated assault committed by the defendant intentionally, knowingly, or recklessly causing bodily injury by using or exhibiting a deadly weapon. *Whitfield v. State*, 408 S.W.3d 709, 718 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Ford*, 38 S.W.3d at 845); *see* Tex. Penal Code §§ 22.01, .02(a)(2) (defining aggravated assault as alleged in this case). The elements of deadly conduct are that the defendant recklessly engaged in conduct that placed another in imminent danger of serious bodily injury. Tex. Penal Code § 22.05. We agree with the reasoning that, because both offenses require at least recklessness and because the use of a deadly weapon in causing bodily injury necessarily places the victim in imminent danger of serious bodily injury, the offense of deadly conduct is established by proof of the same or less than all the facts that prove aggravated assault. *Whitfield*, 408 S.W.3d at 718 (citing *Ford*, 38 S.W.3d at 845); *see* Tex. Crim. Proc. art. 37.09(1). As a matter of law, deadly conduct is a lesser included offense of this form of aggravated assault.

We further conclude, however, that the evidence in the record would not permit a jury to find Velasquez guilty only of deadly conduct. *See Whitfield*, 408 S.W.3d at 718-19. Velasquez's assaultive conduct was alleged as stabbing McKinnis in the abdomen and cutting his hand. There is no evidence that Velasquez acted only recklessly when he cut and stabbed McKinnis; the only evidence is that he did so intentionally and knowingly. Further, there is no evidence that Velasquez only recklessly put McKinnis in fear of serious bodily injury or death by cutting and stabbing him (as required for deadly conduct) but did not actually cause him harm by using the knife (as required for this form of assault). Accordingly, on this record, Velasquez

10

could not be found guilty of deadly conduct but not of aggravated assault. While the jury might have entirely discounted all of the evidence or might have acquitted Velasquez based on self-defense, it could not find Velasquez guilty of deadly conduct and not of aggravated assault on this record. The trial court did not err by refusing to instruct on the lesser-included offense of deadly conduct. We overrule Velasquez's first issue.

**The court did not apply the wrong self-defense instruction.**

Velasquez contends that the trial court erred by applying the wrong self-defense instruction. He asserts that he was entitled to an instruction on self-defense based on the self-defense statute, Texas Penal Code § 9.31(a). He cites testimony regarding McKinnis punching and choking him—not Martinez—when Velasquez stabbed McKinnis. Velasquez complains about the trial court instructing the jury about defense of a third person under Texas Penal Code § 9.33, and he contends that he was fundamentally deprived of the affirmative defense of self-defense. He was not.

When reviewing jury charge errors, we first determine whether error exists and then, if there is error, whether the error requires reversal. *Arteaga v. State*, 521 S.W.3d 329, 333-39 (Tex. Crim. App. 2017).[5] The degree of harm necessary to require reversal depends on whether appellant timely objected at trial. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). If the appellant objected timely at trial, reversal is required upon a showing of some harm to the appellant; without a timely objection, reversal is only required upon a showing of egregious harm. *Id.* Because there is no error, Velasquez's appeal fails under either standard.

---

[5] The holding in *Arteaga v. State*, 521 S.W.3d 329 (Tex. Crim. App. 2017), was superseded in part by the adoption of amendments to Texas Penal Code section 22.011(f), which is not relevant to this case.

11

The trial court instructed the jury on self-defense. In a section of the charge titled "Additional Law," the trial court discusses in the abstract both self-defense and defense of a third party. With respect to self-defense, the trial court instructed that "[a] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." This instruction directly quotes the self-defense statute. *See* Tex. Penal Code § 9.31(a). In the very next section titled "Application," the trial court applies only the issue of self-defense:

> To decide the issue of self-defense, you must determine whether the state has proved, beyond a reasonable doubt, one of the following:
>
> 1. The defendant did not believe his conduct was immediately necessary to protect himself against Derrick McKinnis's use or attempted use of unlawful deadly force; or
>
> 2. The defendant's belief was not reasonable.
>
> You must all agree that the state has proved, beyond a reasonable doubt, either element 1 or 2 listed above. You need not agree on which of these elements the state has proved.
>
> If you find that the state has failed to prove, beyond a reasonable doubt, both element [sic] 1 and 2 listed above, you will acquit the Defendant of the felony offense of Aggravated Assault, as alleged in the indictment, and say by your verdict "Not Guilty."
>
> If you all agree the state has proved, beyond a reasonable doubt, each of the elements of the offense of Aggravated Assault, and you all agree the state has proved, beyond a reasonable doubt, either element 1 or 2 listed above, then you will find the Defendant, BRIAN LEE VELASQUEZ, "Guilty" of the felony offense Aggravated Assault, as charged in the indictment and so say by your verdict.

Velasquez does not explain how this instruction was erroneous or deprived him of his affirmative defense of self-defense. Though there was *also* an abstract definition of defense of third parties,

12

the trial court instructed the jury on self-defense both abstractly and as applied to this case. Velasquez has not shown that the additional instruction on defense of a third party deprived him of an instruction on self-defense. We overrule Velazquez's third issue.

## CONCLUSION

We affirm the trial court's judgment.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed: July 9, 2021

Do Not Publish