Opinion filed October 14, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00344-CR

_____

**JACOB ADAM GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 27130A**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Appellant, Jacob Adam Garcia, of the second-degree felony offense of aggravated assault with a deadly weapon: to wit, a knife. Following Appellant's plea of true to an enhancement allegation, the jury found the enhancement to be true and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of forty-five years. Appellant presents two issues on appeal: (1) that the trial court erred in denying

Appellant's requested jury instruction on the lesser included offense of deadly conduct and (2) that the evidence at trial was legally insufficient to support the deadly weapon finding. We affirm.

*Background Facts*

On September 30, 2016, Roy Martinez Jr., his girlfriend Jamie Dickerson, and his niece Stephanie Maldonado were out together at the Western Edge bar in Abilene. The three arrived sometime after 9:00 p.m. for drinks and karaoke. Shortly after Martinez, Dickerson, and Maldonado arrived at the bar, another group arrived, consisting of Appellant, Cherokee Miller, and four others. The men in the second group, including Appellant, were wearing Villista T-shirts. The Villista is known to be a support group for the Banditos motorcycle club. Dickerson testified that she was sitting at a table near the karaoke booth when she was approached by Miller.

Words were exchanged between Miller and Dickerson. Michelle Browning, a Western Edge bartender, testified that Miller hit Dickerson with a beer bottle and threw her into a pool table. Chairs and tables were knocked down and several other patrons, including Martinez, attempted to stop the fight and to pull the women apart. After Dickerson was able to free herself from Miller's assault, she saw Martinez lying on a table, bleeding, and she heard Maldonado cry out, "Please stop!"

Maldonado testified that during the chaos of the fight, she, Dickerson, and Martinez were separated but that, when she located Martinez, she witnessed Appellant stab him at least eight times. She screamed at Appellant to leave Martinez alone, and when Appellant stopped, she heard Appellant say, "Let's get the hell out of here, let's get the F out of here." Maldonado testified that she saw Appellant close the folding knife that he was holding and exit the bar. Dickerson also testified that she saw Appellant folding up a knife with a silver, six-to-eight-inch tapered blade and running out the door of the bar following the stabbing.

2

Martinez testified that, as he was attempting to break up the fight between Dickerson and Miller, he was attacked by Appellant and another man. According to Martinez, Appellant had a knife and used it to stab Martinez several times. The injuries to the left side of Martinez's body resulted from Appellant stabbing Martinez with a knife. The other assailant, Danny Machado, stabbed Martinez in the back of the head and the back of the neck.

After Miller, Appellant, and the four others left the bar, Martinez was discovered to have multiple stab wounds that were bleeding profusely. Despite efforts by Dickerson, Maldonado, the owner of the bar, and several others, they were not able to control the bleeding. Bartender Taylor Bien testified that over fifty bar towels were used to attempt to control the loss of blood. Dickerson testified that with the loss of blood, Martinez was having trouble maintaining consciousness. After Browning's call to 9-1-1, officers and paramedics quickly arrived on the scene.

Officer Bradley Hambright, Officer Sterling Riddle, and Dr. Kelly Hyde all testified that Martinez's injuries were consistent with knife wounds. Martinez was transported by ambulance to Hendrick Medical Center in Abilene. Upon arrival, Martinez was examined by Dr. Hyde in the Hendrick emergency Dr. Hyde observed more than seven penetrating injuries to Martinez's neck and left side, with two "fairly substantial open lacerations" to the left flank and one to the thorax that required surgery. One laceration exposed his left lower rib, which was partially severed in the attack. Dr. Hyde focused his care primarily on the two injuries to the left flank because these presented a risk of serious injury to internal organs. Martinez underwent surgery. Martinez convalesced for approximately five days in the hospital. He was not able to return to work for two months, and at the time of trial, Martinez testified that he continued to have trouble lifting objects and using his left hand.

3

The grand jury indictment alleged that Appellant "intentionally and knowingly use[d] a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury, and the said [Appellant] did then and there intentionally and knowingly cause bodily injury to Roy Martinez, Jr. by stabbing the said Roy Martinez, Jr. with said deadly weapon. The jury was instructed on the indicted offense of aggravated assault with a deadly weapon. At the conclusion of the guilt/innocence phase, and before the charge was read to the jury, Appellant's trial counsel requested the submission of the lesser included offense of deadly conduct. The trial court denied the request, and the jury convicted Appellant of aggravated assault with a deadly weapon.

Appellant raises two issues. First, Appellant challenges the trial court's refusal to instruct the jury on the lesser included offense of deadly conduct. Second, Appellant contends that the evidence was insufficient to support a jury finding that the knife used by Appellant was a deadly weapon.

## I. Issue One: No Evidence Supporting Only the Lesser Included Offense of Deadly Conduct

Appellant argues in his first issue that the trial court erred when it denied Appellant's request to instruct the jury on the lesser included offense of deadly conduct.[1] We disagree.

### A. Lesser Included Jury Instruction

#### 1. Standard of Review

First, we must determine, as a matter of law, whether the offense to be submitted is a lesser included offense of the charged offense. *Safian v. State*, 543

---

[1]We are aware of the decision in *Williams v. State*, No. PD-0477-19, 2021 WL 2132167 (Tex. Crim. App. May 26, 2021), which is currently pending rehearing before the Court of Criminal Appeals. The *Williams* opinion is subject to change, and its application to this case is currently unclear. For the purposes of our opinion, we will assume that, regardless of *Williams*, Appellant preserved Issue No. 1 for appeal.

S.W.3d 216, 219−20 (Tex. Crim. App. 2018); *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). This is a question of law that does not depend on the evidence presented at trial. *Safian*, 543 S.W.3d at 220; *Rice*, 333 S.W.3d at 144. Because the first prong of the analysis concerns a question of law, we "do not consider the evidence that was presented at trial. Instead, we consider only the statutory elements of [the offense] as they were modified by the particular allegations of the indictment. . . . We then compare them with the elements of the [requested] lesser offense." *Wortham v. State*, 412 S.W.3d 552, 555 (Tex. Crim. App. 2013) (alterations in original) (quoting *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007)). An offense is a lesser included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Wortham*, 412 S.W.3d at 554−55.

Second, we determine whether there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser included offense. *Safian*, 543 S.W.3d at 219; *Rice*, 333 S.W.3d at 145. We review all of the evidence presented at trial. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Ybarra v. State*, 621 S.W.3d 371, 379 (Tex. App.—Eastland 2021, pet. ref'd). This requirement is satisfied if there is "(1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser -included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson v. State*, 568 S.W.3d 667, 671 (Tex. Crim. App. 2018). If there is more than a scintilla of evidence raising the lesser offense or negating or rebutting an element of the greater offense, the defendant is entitled to a jury instruction on the lesser included offense. *Id.* This evidence cannot be speculative; it must consist

of affirmative evidence that raises both the lesser included offense and rebuts or negates an element of the greater offense. *Ybarra*, 621 S.W.3d at 379 (citing *Wortham*, 412 S.W.3d at 558).

### 2. Analysis

#### a. Step One: Is it a lesser included offense?

As relevant here, a person commits the offense of assault if he "intentionally [or] knowingly . . . causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2020).[2] An assault is elevated to aggravated assault if, while committing the assault, the person "uses or exhibits a deadly weapon." *Id.* § 22.02(a)(2) (West 2019). A person commits the offense of deadly conduct if "he recklessly engages in conduct that places another in imminent danger of serious bodily injury." *Id.* § 22.05(a). When the State establishes the higher culpable mental state of intentionally or knowingly, it necessarily establishes the lower mental state of recklessness. *Guzman v. State*, 188 S.W.3d 185, 190 (Tex. Crim. App. 2006); *Bell v. State*, 693 S.W.2d 434, 438−39 (Tex. Crim. App. 1985). There is no dispute in this case that deadly conduct is a lesser included offense of aggravated assault. *See Guzman*, 188 S.W.3d at 190–91; *Whitfield v. State*, 408 S.W.3d 709, 718 (Tex. App.—Eastland 2013, pet. ref'd). Therefore, the first step in the analysis is satisfied, and we must now determine whether the record presents some evidence that would support a rational finding that the defendant is guilty only of the lesser included offense.

---

[2]We note that, although Section 22.01(a)(1) provides that an assault of this nature may also be committed "recklessly," the indictment in this case does not include the culpable mental state of "recklessly."

### b. *Step Two: Is there affirmative evidence supporting a lesser included offense?*

There must be affirmative evidence in the record that either "(1) . . . directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) . . . is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson*, 568 S.W.3d at 671. The defendant will be entitled to a jury instruction on a lesser included offense if there is more than a scintilla of evidence to this effect. *Id.*

Here, there is no affirmative evidence supporting an instruction on a lesser included offense. Therefore, the second step of the *Safian* analysis has not been met. *See Safian*, 543 S.W.3d at 217. Appellant argues that common sense and life experiences are enough to show more than a scintilla of affirmative evidence in this case. We disagree. Both are, at best, subjective and fall far short of affirmative evidence. The only evidence regarding Appellant's mental state was presented by the State and included witnesses who saw Appellant holding a knife and stabbing Martinez. Martinez did not have a weapon and was not involved in the original altercation at the bar. The evidence indicates that Appellant approached Martinez and stabbed him multiple times before fleeing. There was no evidence or alibi negating the evidence presented by the State that Appellant acted knowingly and intentionally.

Absent any affirmative evidence that Appellant merely acted recklessly, instead of intentionally or knowingly, a rational factfinder could not have found Appellant guilty only of deadly conduct. *See Whitfield*, 408 S.W.3d at 718–19. Therefore, the trial court did not err in refusing to submit a charge on the lesser included offense of deadly conduct. We overrule Appellant's first issue.

*II. Issue Two - Sufficient Evidence that the Knife was Used as a Deadly Weapon*

In his second issue, Appellant contends that the evidence presented in this case was insufficient to establish that the knife he used in the assault against Martinez was a deadly weapon. We disagree.

*A. Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our

judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

### B. Analysis

The indictment charged Appellant with aggravated assault, alleging that he intentionally and knowingly caused bodily injury to another, by stabbing with a deadly weapon, to-wit: a knife. The Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17)(B) (West 2021). The Penal Code's "plain language" does not require that the actor actually intend to cause death or serious bodily injury. *McCain*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The critical inquiry is "whether the object '*could* be a deadly weapon *under the facts of the case*'" based upon the defendant's manner of use or intended use. *Flores v. State*, 620 S.W.3d 154, 158−59 (Tex. Crim. App. 2021) (quoting *McCain*, 22 S.W.3d at 502 (first emphasis added)). Although the Court of Criminal Appeals has outlined that "a knife is not a deadly weapon per se, it has been held that it can qualify as such through the manner of its use, its size and shape[,] and its capacity to produce death or serious bodily injury." *Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978).

Appellant contends that there is insufficient evidence to support the jury's determination that the knife could have caused death or serious bodily injury. He asserts that only two witnesses, Dickerson and Martinez, claim to have seen the knife used by Appellant; that the knife was only described as "silver"; that the injuries sustained by Martinez did not create a substantial risk of death; and that the officers

who testified did not specifically state that the knife used by Appellant was a deadly weapon.

Appellant's argument understates the testimony that was presented to the jury. Officer Hambright and Officer Riddle testified that a knife wound could cause death or serious bodily injury and that Martinez's injuries were consistent with knife wounds. Three witnesses (Dickerson, Maldonado, and Martinez himself) identified Appellant as the one holding a knife during (and immediately after) the altercation with Martinez. Further, Dickerson described the knife as having a silver, six-to-eight-inch tapered blade. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008) (jury could infer from injuries of victim and police testimony that a two-inch folding knife or a key was a deadly weapon because it was capable of causing serious bodily injury).

Dr. Hyde, a board-certified general surgeon, testified regarding the knife wounds received by Martinez. Based on the stab wounds to the left side of Martinez's abdomen, Dr. Hyde was concerned that Martinez's internal organs and structures—including the lungs, heart, diaphragm, spleen, kidneys, large intestine, and ureter—had been penetrated. He stated that "there is certainly a potential for life-threatening injuries to vital structures from here." Thus, it was necessary to do an exploratory laparotomy, surgically opening Martinez's abdomen to explore for possible penetration of internal organs and structures. Dr. Hyde testified that, in his experience, a knife can be a deadly weapon and that, in his opinion, the injuries sustained by Martinez on September 30, 2016, would create a substantial risk of death.

In this case, Appellant used a knife with a six-to-eight-inch blade during the bar fight and he stabbed Martinez with that knife multiple times, causing several puncture wounds—some of which required invasive surgery— a fractured rib, and

a threat of injury to Martinez's vital organs. Here, there is sufficient evidence that the knife, in the manner of its use or intended use and its demonstrated capacity to produce serious bodily injury, qualified as a deadly weapon. Accordingly, viewed in the light most favorable to the verdict, we hold that a rational trier of fact could have concluded that sufficient evidence demonstrated that the knife, as used by Appellant to stab Martinez, was a deadly weapon. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


October 14, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.